**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **ULYSSES COLLINS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:04-cv-70 (HL) |
| | : | |
| **ONYX WASTE SERVICES OF** | : | |
| **NORTH AMERICA, LLC, et al.,** | : | |
| | : | |
| Defendants. | : | |

_____

## ORDER

Before this Court is Defendants' Motion for Summary Judgment (Doc. 15).  For the

reasons set forth below, the Motion is granted.

**I.      FACTS AND PROCEDURAL HISTORY**

**A.      Employment History**

Viewing the evidence in the light most favorable to the plaintiff as the nonmoving

party, the Court finds as follows.  Plaintiff, Ulysses Collins ("Collins"), was employed at the

Pecan Row Landfill ("Landfill") in Valdosta, Georgia from 1992 through August 13, 2003.

(Collins Dep. at 220; Walk Aff. ¶ 13.)  Onyx Waste Services of North America, LLC ("Onyx

Waste") acquired ownership of the landfill in late 1998.  (Walk Aff. ¶ 3.)  When Onyx Waste

purchased the Landfill, Collins was employed as Operations Manager; soon thereafter he was

assigned to report to the new General Manager, Gregg[1] Walk ("Walk").  (Collins Dep. at 220-21.)  In early 2002, Walk was promoted to Area Manager, Collins was promoted to Site Manager and Collins continued reporting to Walk.  (Walk Aff. ¶ 5,6.)  In Collins' first evaluation as Site Manager, administered by Walk in January of 2003, his performance was rated "Below Expectations" or "Unsatisfactory" in 10 of 15 categories and "Unsatisfactory" overall.  (Pl. Dep. Ex. 6.)  Shortly after this evaluation was administered, Onyx Waste initiated a search for a new Site Manager.  (Walk Dep. at 58-59.)

In or around June of 2003, Nick Marotta ("Marotta"), Regional Engineer for Onyx Waste, was contacted by a former colleague, Danny Muck ("Muck"), regarding the open position of Site Manager at the Landfill.  (Muck Dep. at 11-13.)  Marotta recommended Muck to Walk (Walk Dep. at 61-62), and he forwarded to him Muck's resume, which reflected Muck's 15 years of experience as a landfill Site Manager (Muck Dep. at 6-7) and 12 years of maintaining heavy equipment of the type used at landfills (id. at 49).  Muck interviewed with Walk in July 2003 (id. at 15-16), and Walk offered Muck the Site Manager job in early August 2003 (id. at 17-18).  Muck accepted the position to begin working at the end of August 2003 (id. at 17).

---

[1] In various documents and motions before the Court, Plaintiff and Defendants refer to both Gregg Walk and Greg Walk.  Because the Court is unsure of the proper spelling of Mr. Walk's first name, it refers to him as "Gregg," the initial identification made by Plaintiff's Complaint and Defendants' Answer.

B.      **Bland Farm Project**[2]

On or about June 2, 2003, a neighboring landowner to the Landfill, Sunnie Bland

("Bland"), contacted Collins and asked if the Landfill could provide some clay under its

Good Neighbor Policy.[3]  (Bland Aff. ¶¶ 4-5, 17-18.)  Collins told Bland the Landfill could

do so, but that Bland would have to arrange to have the clay hauled to her property.  (Id. at

¶ 6.)  After this conversation, Collins informed Walk that Bland would be sending her own

trucks to collect some clay, and Walk verbally approved the project.  (Walk Dep. at 43-44.)

Subsequently, Collins visited Bland's property to estimate the amount of clay she

needed.  (Bland Aff ¶ 7.)  Once there, Bland informed Collins that she intended to hire a

contractor to level her land and build a retaining wall, but that she was concerned the work

would destroy her yard.  (Id.)  In response, Collins told Bland the Landfill owned equipment

that could complete the project without damaging her yard, and he offered to complete the

---

[2] Portions of the following section recount a factual sequence included in Defendants' Statement of Undisputed Material Facts (Doc. # 17 at ¶¶ 59-68).  Although the Court is bound to view the evidence in this case in the light most favorable to Plaintiff as the nonmoving party when evaluating this Motion for Summary Judgment, there are two reasons to accept Defendants' version of these events.  First, as Defendants note in their Reply, Local Rule 56 provides "[a]ll material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted."  Therefore, where Plaintiff's Statement of Material Facts merely ignores Defendants' material facts, such as with these facts, Plaintiff is deemed to have admitted them.  Second, while Plaintiff failed to agree or disagree with this sequence of facts in his Statement of Material Facts, his Memorandum of Law in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment describes a substantially similar story.  (Doc. # 24 at 6-7.)

[3] The Landfill has a practice, known as the "Good Neighbor Policy," of performing various tasks for neighboring landowners in an effort to maintain their goodwill.  (Walk Dep. at 49-50.)  The assistance provided by the Landfill has ranged from small tasks, such as removing yard debris (Collins Dep. at 67), to large ones, like repairing a dam (Bland Aff. ¶ 5).  Work performed under the Good Neighbor Policy is free of charge.  (Collins Dep. at 66-67.)

work for $45 an hour to reimburse the Landfill for fuel and wear on its heavy equipment. (Id. ¶ 8.) Collins took measurements and, in a few days, he called her with an estimate of $1650 to construct a retaining wall approximately 4 feet high and 80 feet long, grade and level the area and haul the necessary clay. (Id. ¶ 9.) Bland agreed to the project, and Collins began work on June 14, 2003. (Id. ¶¶ 9-10.) Collins never created a written agreement with Bland limiting the Landfill's liability for the project. (Collins Dep. at 86.)

Collins offered to pay Eltegro Lee, a subordinate employee at the Landfill, "$350 to $400 out of h[is] pocket" to help with the project. (Lee Dep. Ex. 14.) Collins also told Lee that Walk knew about the project. (Id.) In the course of their work, Lee and Collins used an excavator, dump truck and bulldozer belonging to the Landfill. (Collins Dep. at 87.) Collins kept no records of the time he and Lee worked on the project.[4] (Id. at 75-82.)

In late July of 2003, Charles Wetherington ("Wetherington"), another Landfill neighbor, called Walk. (Walk Dep. at 44; Walk Aff. ¶ 8.) Wetherington complained to Walk that equipment owned by Onyx Waste was crossing his property without his permission and had damaged his road. (Walk Aff. ¶ 8.) Relying on his earlier conversation with Collins, and believing that Bland was using her own trucks for the work, Walk initially told Wetherington that he was mistaken and suggested Wetherington call Bland to determine whether the trucks had, in fact, been operated by her contractors. (Id.) Subsequently, Walk

---

[4] Both Plaintiff and Defendants' filings contemplate that the work done by Lee, a nonexempt employee, may have been in violation of federal wage and hour laws. (Plaintiff's Statement of Material Facts ¶ 52; Defendants' Statement of Material Facts ¶ 74; Collins Dep. at 80-81.) The Court expresses no opinion at this time whether any work done by Lee may have constituted such a violation.

conveyed Wetherington's complaint to Collins, and Collins admitted he had used Onyx Waste trucks to haul "a few loads" of clay to Bland's property.  (Walk Dep. at 45-46; Collins Dep. Ex. 14; Walk Aff. ¶ 9.)  Collins did not disclose to Walk that the project was more extensive than merely hauling clay (Collins Dep. at 95-96, 102), that there was no contract with Bland limiting the Landfill's liability for the project (id. at 86), that Lee was assisting with the project (id. at 110), or that Collins was charging Bland $1650 for the work (id. at 111).

After his conversation with Collins, Walk called Wetherington to apologize for misinforming him and offered to repair any damage to his property.  (Walk Dep. at 46-47; Walk Aff. ¶ 9.)  Walk then visited Bland's property, where he discovered the true scope of Collins' work.  (Walk Aff. ¶ 10.)  Walk called his superior, Regional Vice President Richard Burke ("Burke"), to inform him of what he had found.  (Id.)  Walk and Burke agreed Collins should be terminated for misleading Walk and using Landfill equipment without authorization, but that he should be retained until a replacement could be hired.  (Id.)  At this point, neither man knew Collins had also agreed with Bland that she would pay for the project.  (Id.)

On August 12, 2003, Bland encountered Walk at a local shopping center and thanked him for the Landfill's assistance with her project.  (Bland Aff. ¶ 14; Walk Aff. ¶ 11.)  Bland was especially grateful the Landfill had saved her a substantial amount of money—she explained that she had received estimates of over $5000 for the project, much less than the $1650 Collins had agreed to charge her.  (Id.)  This conversation was the first Walk had

heard about any payment taking place for the work.  (Id.)

Walk called Burke again to relay this new detail, and both agreed Collins should be

terminated immediately. (Walk Aff. ¶ 12.)  The next morning, August 13, 2003, Walk called

Collins into his office and confronted him with all of the information he had uncovered.  (Id.

at ¶ 13.)  Collins responded that he had not yet been paid by Bland, and when he was paid,

that money would be forwarded to the Landfill.  (Id.)  At the conclusion of the meeting, Walk

fired Collins, effective immediately.  (Id.)

### C.    Equal Employment Opportunity Commission Complaint

Collins filed a complaint with the Equal Employment Opportunity Commission

(EEOC) dated September 10, 2003, alleging he was terminated because of his race in

violation of Title VII of the Civil Rights Act of 1964, as amended.  (Pl. Dep. Ex. 10.)  After

an investigation, the EEOC determined no evidence of discrimination existed and issued a

Notice of Right to Sue letter dated March 30, 2004.  Collins timely filed the present lawsuit

within ninety days of receiving this notification, alleging various violations of Title VII,

defamation, intentional infliction of emotion distress ("IIED") and conspiracy to deprive him

of his civil rights under 42 U.S.C. §1985(3) against Defendants Onyx Waste, Onyx Pecan

Row Landfill LLC, and Walk.[5]

---

[5] Individual defendants are not proper defendants to Collins' Title VII claims.  See Busby
v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against
the employer, not individual employees whose actions would constitute a violation of the Act.").
Therefore, to the extent that Collins asserts Title VII claims against Defendant Walk in his
individual capacity, or any other person acting in his individual capacity, these claims are dismissed.

## II.     SUMMARY JUDGMENT STANDARD

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).  The Court may not, however, make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law.  Celotex, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law.  Id. at 324-26.  This evidence must consist of more than mere conclusory allegations.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme

summary judgment must be entered "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   ANALYSIS

### A.   Title VII Claims

Title VII prohibits discrimination on the basis of race, color, religion, sex or national

origin in various employment practices.   42 U.S.C.A. § 2000e-2 (2003); Bass v. Bd. of

County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1103 (11th Cir. 2001).  Plaintiffs in

a Title VII case bear the burden of proving the employer's unlawful discrimination.  Hinson

v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000).  A plaintiff can

establish a case for discrimination under Title VII by introducing direct evidence of

discriminatory intent or through circumstantial evidence that creates an inference of

discrimination.  Id.  "Only the most blatant remarks, whose intent could be nothing other than

to discriminate on the basis of race . . . constitute direct evidence of discrimination."  Bass,

256 F.3d at 1105 (citations and quotations omitted).  Evaluating circumstantial evidence,

courts use the McDonnell Douglas/Burdine burden shifting mechanism.  McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248

(1981).

Under the McDonnell Douglas/Burdine framework, the plaintiff must first establish

a prima facie case of discrimination.  Burdine, 450 U.S. at 252-53.  To establish this prima

facie case, the plaintiff must show: (1) he belongs to a protected class, (2) he was subject to

an adverse employment action, (3) the employer treated similarly-situated employees outside

his protected class more favorably, and (4) he was qualified for the job.  See Wilson v. B/E

Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  This showing "creates a rebuttable

presumption that the employer acted illegally."  Id. at 1087.  The defendant employer then

has the burden to show a legitimate, nondiscriminatory reason for the employment action.

Id.  If the defendant can demonstrate such a reason, the burden shifts back to the plaintiff,

who must prove that "the legitimate reasons offered by the defendant were not its true

reasons, but were a pretext for discrimination."  Burdine, 450 U.S. at 253.

However, before a plaintiff is even allowed to try to prevail in court under the

McDonnell Douglas/Burdine burden shifting test, he must satisfy an additional, preliminary

requirement.  As our sister court summarized:

> [a]n aggrieved person who alleges an unlawful employment practice under
> Title VII is required to file a charge of discrimination with the EEOC within
> 180 days following the alleged discriminatory conduct by the employer.  42
> U.S.C. § 2000e-5(e)(1).  The statutory provisions that require a plaintiff to file
> a charge of discrimination concerning the alleged discrimination by a
> defendant is a threshold, jurisdictional prerequisite to bringing suit under Title
> VII, aimed, in part, to ensure that the parties attempt to resolve their dispute
> in the first instance through methods of conciliation with the EEOC.  The
> Court of Appeals for the Eleventh Circuit has squarely held that a plaintiff's
> judicial complaint is limited to the scope of the administrative investigation
> which could reasonably be expected to grow out of the charge of
> discrimination.  Absent some allegation of fact sufficient to put the defendant
> on notice of the nature and scope of the claim against it, the plaintiff is barred
> from asserting other types of claims in subsequent judicial proceedings that
> may bear some connection, however distinct, to the bare claim asserted in the
> EEOC charge.

Gaston v. Home Depot USA, Inc., 129 F. Supp. 2d 1355, 1365 (S.D. Fla. 2001) (citations and

quotations omitted); see also Murray v. John D. Archbold Memorial Hosp. Inc., 50 F. Supp.

2d 1368, 1380 (M.D. Ga. 1999) (same).

At various points in his lawsuit, Collins has raised a total of five claims of violations

under Title VII. Collins' Complaint, filed June 17, 2004, alleged unlawful termination based

on racial discrimination. During discovery, Collins advanced four new Title VII claims:

(1) salary discrimination, (2) discriminatory denial of a vehicle allowance, (3) discriminatory

failure to train and support, and (4) discriminatory administration of a performance

evaluation. Therefore, to evaluate the validity of his claims, the Court will first ascertain

which of Collins' current Title VII claims were included in his EEOC charge, and thus meet

the necessary threshold, jurisdictional prerequisite. Second, for the discrimination claims

that remain, the Court will determine whether Collins can establish direct or circumstantial

evidence of discrimination.

### 1. Title VII Claims Included in Collins' EEOC Charge

As noted earlier, filing an EEOC Charge "is a threshold, jurisdictional

prerequisite to bringing suit under Title VII." Murray, 50 F. Supp. 2d at 1380. If a plaintiff

fails to allege facts that fairly notify a defendant of the nature of his discrimination claims,

those claims are barred. Id. Although Collins properly filed a timely EEOC Charge, that

Charge only alleged he was terminated because of his race. Nowhere in his Charge did

Collins mention (1) salary discrimination, (2) discriminatory denial of a vehicle allowance,

(3) discriminatory failure to train and support, or (4) discriminatory administration of a

performance evaluation. Nor are these claims reasonably related to Collins' termination

claim.  See, e.g., Williams v. Hager Hinge Co., 916 F. Supp. 1163, 1173-74 (M.D. Ala. 1995)

("Courts have found that a charge based on racial discrimination does not encompass all

potential claims for denial of promotions, pay raises, transfers, and overtime.").  Therefore,

because Collins has failed to meet this jurisdictional prerequisite, these four Title VII claims

must be dismissed, and Defendants' Motion for Summary Judgment with respect to these

claims is granted.[6]  Collins' termination claim, which was properly included in his Charge,

is not jurisdictionally barred and must now be evaluated.

### 2.     Unlawful Termination Claim

Direct evidence is "evidence, which if believed, proves [the] existence of [the]

fact in issue without inference or presumption."  Merritt v. Dillard Paper Co., 120 F.3d 1181,

1189 (11th Cir. 1987).  Here, Collins has offered no direct evidence of discrimination to

support his claims and, therefore, must rely on circumstantial evidence.  To establish a prima

facie circumstantial discrimination case, Collins must show: (1) he belongs to a protected

class, (2) he was subject to an adverse employment action, (3) the employer treated similarly-

situated employees outside his protected class more favorably, and (4) he was qualified for

the job.  See Wilson, 376 F.3d at 1091.

In this case, Collins can show three of the necessary requirements—he belongs to a

protected class, he was subject to an adverse employment action and he was qualified for his

---

[6] Having concluded that these four Title VII claims are jurisdictionally barred, there is no
need for the Court to consider whether they are time-barred or would fail on the merits.
Accordingly, the Court does not undertake to do so.

job.[7]   However, Collins cannot prove the fourth requirement: that Onyx Waste treated

similarly-situated employees outside his protected class more favorably.  To make this

showing, Collins must show an employee who is "similarly situated in all relevant aspects,"

who was "involved in or accused of the same or similar conduct" and who was treated more

favorably.  Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)

(quotations and citations omitted).[8]  Here, Collins has failed to present comparators who were

retained despite misconduct similar to that which resulted in his own dismissal.[9]  Therefore,

Collins has failed to show a critical element necessary to present a prima facie case of

discrimination under Title VII, and Defendants' Motion for Summary Judgment with respect

to Collins' termination claim is granted.  In light of the Court's earlier dismissal of Collins'

other four Title VII claims, the entirety of Count One of Collins' suit is now dismissed.

---

[7] Furthermore, it appears Onyx Waste conceeds these three elements.  (Doc. # 16 at 14.)

[8] Collins appears to have misinterpreted Maynard v. Bd. of Regents, 342 F.3d 1281 (11th Cir. 2003).  Although Collins asserts in his Memorandum of Law in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment that Maynard would allow him to meet his prima facie burden without satisfying the "similarly-situated" standard, this case, in fact, supports the Eleventh Circuit's adherence to this requirement.  (Doc. # 24 at 10.)  In Maynard, a case that involved a doctor's dismissal from a medical residency program, the Eleventh Circuit held that "[t]o satisfy the prima facie requirement, [a plaintiff] must show that a non-minority resident in similar circumstances was retained . . . ."  Id. at 1289.  Indeed, the inquiry in Maynard focused on the similarities, or lack thereof, between the plaintiff and several comparators' misconduct and punishments.  Id.

[9] Defendants have also argued that the Court should grant summary judgment because, even if Collins could establish a prima facie case, he could not show that Onyx Waste's non-discriminatory reasons for its actions were pretextual.  Because the Court finds that Collins has not shown a prima facie case, it will grant Defendant's Motion for Summary Judgment without considering this issue.

12

###### B.      Defamation Claim

In Count Two of his Complaint, Collins seeks recovery for defamation allegedly committed by Defendants.  Although unclear in his Complaint what specific statements Collins considered defamation, both parties agreed in pleadings that this claim is premised solely on the information Walk provided the EEOC during its investigation of Collins' EEOC Charge.  (Pl.'s Resp. at 8; Def.'s Reply to Pl.'s Resp. at 11.)

Under Georgia state law, all statements "contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged.  However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous."  O.C.G.A. § 51-5-8 (2000).  This absolute privilege has been "broadly construed" in appellate decisions in Georgia to encompass statements made in the course of "acts of legal process" and "quasi-judicial" proceedings.  Skoglund v. Durham, 502 S.E.2d 814, 816 (Ga. Ct. App. 1988) (citations and quotations omitted); see also Land v. Delta Airlines, Inc., 250 S.E.2d 188 (Ga. Ct. App. 1978) (applying privilege to employer's statements made to and from the state employment agency, the Employment Security Agency of Georgia Department of Labor).

Although the Court's research has failed to produce any state or federal court opinions examining the applicability of O.C.G.A. § 51-5-8 to EEOC proceedings, other courts have determined EEOC proceedings are quasi-judicial in nature and absolutely privileged under similar state laws.  See, e.g.,  Shabazz v. PYA Monarch, LLC, 271 F. Supp. 2d 797, 803-05 (E.D. Va. 2003) (collecting cases from several jurisdictions).  The Court agrees with the

reasoning of the United States District Court of the Eastern District of Virginia. Therefore,

the Court finds that the proceedings before the EEOC were quasi-judicial in nature. As such,

any relevant communications between Defendants and the EEOC are absolutely privileged

and may not serve as the basis for Collins' proposed defamation claim. Defendants' Motion

for Summary Judgment with respect to Collins' defamation claim is granted, and Count Two

of Collins' suit is dismissed.[10]

### C.     Intentional Infliction of Emotional Distress Claim

Collins also raised a claim in his Complaint, Count Three, that charged Defendants

with IIED. Although Collins' complaint specifies Defendants inflicted intentional emotional

distress upon him "by discharging the Plaintiff" (Compl. ¶ 40), both parties agreed in

pleadings (Pl.'s Resp. at 14; Def.'s Reply to Pl.'s Resp. at 11) that Georgia law does not

recognize an IIED claim based on termination of at-will employment. See Beck v. Interstate

Brand Corp., 953 F.2d 1275, 1276 (11th Cir. 1992). Collins further maintains, however, that

---

[10] In Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment, they contend Collins has conceded that summary judgment is appropriate on his defamation claim, in part because he made no response to Defendants' argument and case law that this claim failed as a matter of law. (Doc. # 26 at 11.) The Court is unwilling to assume Plaintiff has, in fact, made such a concession. Defendants' confusion is understandable, since Collins' only mention of his defamation claim in his Memorandum of Law in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment is the mysterious statement that "[d]efamation . . . [is a] legal issue that Plaintiff, as a layman, cannot properly set forth for the Court. His counsel is better equipped to do so based on the facts and case law enumerated below." (Doc. # 24 at 8.) The remainder of Collins' brief following this strange statement contains no additional explanation of his defamation claim. Nevertheless, what is clear is that the parties agree this claim is based on statements Defendants made to the EEOC in the course of its investigation, statements which, for the aforementioned reasons, are entitled to absolute immunity. Therefore, Plaintiff's claim, conceded or not, must necessarily fail.

his IIED claim is also based on months of false accusations of violating Company policy and knowing that he would be replaced by a white male who was the friend of management personnel.  (Pl.'s Resp. at 14.)

Establishing a claim for IIED requires evidence of four essential elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the existence of a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe.  Jarrard v. United Parcel Svc., 529 S.E.2d 144, 146 (Ga. Ct. App. 2000).  In other words, a plaintiff must show that a defendant's behavior was so extreme or outrageous that "no reasonable man could be expected to endure it."  Hammer v. Slate, 20 F.3d 1137, 1144 (11th Cir. 1994) (quoting Bridges v. Winn-Dixie of Atlanta, Inc., 235 S.E.2d 445, 448 (1985)).

Even assuming, for the sake of argument, Collins has provided adequate proof that he has suffered severe emotional distress,[11]  Collins certainly failed to offer sufficient proof to satisfy the remaining three elements.  The record before the Court fails to reflect any intentional or reckless conduct by Defendants, let alone conduct that could be said to have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Jarrard, 529 S.E.2d at 147.  Although Collins has said he suffered Defendants'

---

[11] This assumption should not be taken as an indication that the Court believes a jury would find Collins had proven he suffered severe emotional distress.  The Court expresses no opinion on this possibility.

unbearable conduct for months, he has offered no evidence to support these assertions.  As such, they amount to mere conclusory allegations.  See Avirgan, 932 F.2d at 1577.  Finally, Collins has drawn no causal connection between the alleged wrongful conduct and his emotional distress.  Defendants' Motion for Summary Judgment with respect to Collins' IIED claim is granted, and Count Three of Collins' suit is dismissed.

### D.      42 U.S.C. § 1985(3) Claim

Collins final claim, Count Four, asserts a conspiracy to deprive him of his civil rights under 42 U.S.C. § 1985(3).  To successfully pursue a claim under § 1985(3), a plaintiff must allege and prove: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) some act committed in furtherance of the conspiracy and (4) an injury to the plaintiff's person or property or a deprivation of any right or privilege of a United States citizen.  See, e.g., United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). Explaining when a § 1985(3) claim must fail, the Court of Appeals for the Eleventh Circuit held:

> In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed.  A complaint may be justifiably dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment for [w]hen a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial.  If he does not so

respond, summary judgment, if appropriate, shall be entered against him. This is consistent with one of the purposes of the summary judgment mechanism, that is, to unmask frivolous claims and put a swift end to meritless litigation . . . .

Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (citations and quotations omitted).

In this case, Collins admitted in his Memorandum of Law in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment that "he has no factual basis for this claim" (Doc. # 24 at 8) and "it's just – it's just the only thing I can come up with that it had to be" (Collins Dep. at 21).  Therefore, the Court finds that Collins clearly has not pleaded the conspiracy allegations with sufficient specificity.  Defendants' Motion for Summary Judgment with respect to Collins' conspiracy claim is granted, and Count Four of Collins' suit is dismissed.[12]

## III.    CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 15) is granted.  Let judgment be entered accordingly.

SO ORDERED, this the 20th day of December, 2005.


/s/
**HUGH LAWSON, JUDGE**

pdl

---

[12]As with Collins' defamation claim, Defendants again argue in their Reply Brief in Support of Defendants' Motion for Summary Judgment that Plaintiff has conceeded summary judgment is appropriate with regard to his conspiracy claim.  (Doc. # 26 at 11.)  The Court is equally unwilling to assume Collins has made such a concession when he has not explicitly done so.  Nonetheless, this claim of Collins', conceded or not, also must necessarily fail.